UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD TINNER,<br><br>                 Plaintiff,<br><br>      v.<br><br>SAN JUAN COUNTY,<br><br>                 Defendant. | CASE NO. C19-925 MJP<br><br>ORDER GRANTING IN PART DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

THIS MATTER comes before the Court on Defendant's Motion to Dismiss (Dkt. No. 18). Having reviewed the Motion, Plaintiff's Response (Dkt. No. 21), the Reply (Dkt. No. 24), the Surreply (Dkt. No. 25), and all related papers, the Court GRANTS in part, DENIES in part Defendant's Motion.

**Background**

Plaintiff, Dr. Gerald Tinner, was working as a science teacher at Orcas Island High School teaching chemistry and biology when he was assigned an assistant, 19 year-old Natalia Garcia, who was a student at the school and an undocumented Mexican national. (Dkt. No. 3,

First Amended Complaint ("FAC"), ¶¶ 3.1, 3.3.) In October 2015, Ms. Garcia told her Spanish teacher that she was involved in a sexual relationship with Plaintiff. (Id., ¶ 3.4.) Plaintiff denies the claim. (Id., ¶¶ 3.5-3.6.)

Ms. Garcia's allegation was referred by the Orcas Island School District to the San Juan County Sheriff's Department for investigation. (Id., ¶ 3.7.) It is a felony for a school employee to knowingly have sexual intercourse with an enrolled student who is less than 21 years old, is not married to the employee, and is more than 60 months junior to the employee. (Id., ¶ 3.8); RCW 9A.44.093. Defendant, Detective Stephen Parker, was assigned to the case. (FAC, ¶ 3.10.) Plaintiff alleges that at some point during his investigation, the Defendant became involved in a sexual relationship with Ms. Garcia. (Id., ¶¶ 3.12-3.19.)

Plaintiff further alleges that the Defendant wanted Ms. Garcia to receive a U-Visa from the federal government, which requires the applicant to be the victim of, or witness to, a serious crime. (Id., ¶ 3.20.) Because of Defendant's investigative report, Ms. Garcia was granted a U-Visa. (Id., ¶¶ 3.20-3.22, 3.25, 3.32-3.33.)

After a 10-day jury trial, Plaintiff was convicted of two counts of Sexual Misconduct with a Minor in the first degree under RCW 9A.44.093. (Id., ¶ 3.29.) Both the Defendant and Ms. Garcia were key witnesses for the prosecution and testified during the trial. (Id., ¶¶ 3.16-3.17.) The Defendant also instructed Ms. Garcia on how she should testify and had her wear his wife's outfits at trial. (Id., ¶¶ 3.18-3.19.) The relationship between the Defendant and Ms. Garcia was not disclosed to the Prosecution, Plaintiff, or his counsel before or during trial. (Id., ¶¶ 3.23-3.24, 3.39.)

Plaintiff was incarcerated both prior to trial and while he was awaiting sentencing after his conviction. (Id., ¶ 3.31.) While Plaintiff was incarcerated and awaiting sentencing, Ms.

Garcia disclosed her sexual relationship with the Defendant to a victim's service advocate. (Id., ¶ 3.32.) When Defendant learned that Ms. Garcia had disclosed the existence and nature of their relationship, he told Ms. Garcia that she needed to "fix it," pressured her to recant her allegation that they had an affair, and offered her money not to disclose their sexual relationship. (Id., ¶ 3.38.)

Upon learning of the relationship between the Defendant and Ms. Garcia, Plaintiff moved for dismissal and a new trial. (Id., ¶ 3.47.) The trial court vacated the conviction, ordering a new trial and then, on April 21, 2017 dismissed the criminal case against Plaintiff with prejudice, describing the actions of law enforcement as a "miscarriage of justice." (Id., ¶¶ 3.48, 3.53-3.54.)

The Skagit County Sheriff's Office conducted an outside investigation of Defendant's alleged affair and concluded that the Defendant had engaged in an ongoing sexual relationship with Ms. Garcia, which began within two weeks of Defendant's investigation and continued through Plaintiff's trial. (Id., ¶¶ 3.33, 3.35-3.36.) During the investigation Defendant told the investigators that "Ms. Garcia set people up." (Id., ¶ 3.34.)

Plaintiff alleges that his wrongful conviction has permanently damaged his personal and professional reputations and resulted in the loss of his research grant from the University of New England in Australia, caused economic damages, including more than $100,000 defending against the criminal charges, and led him to lose custody of his young son. (Id., ¶¶ 3.65-3.66, 3.70-3.74.)

Plaintiff now brings claims against Defendant for violating his right to a fair trial, engaging in a conspiracy, acting negligently, and for the tort of outrage. (Id., ¶¶ 4.1-4.9, 6.1-6.14, 7.1-7.3, 8.1-8.8.) Defendant moves to dismiss Plaintiff's due process, conspiracy, and

negligence claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). (Dkt. No. 18.)

## Discussion

**I.     Defendant's Motion to Strike**

As an initial matter, Defendant has moved to strike Exhibit C to the Declaration of Nicholas Power (Dkt. No. 23 ("Power Decl"), Ex. C), which is a newspaper article about the dismissal of the criminal charges against Plaintiff and the current lawsuit before the Court. (Dkt. No. 24 at 2.) "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." Id. at 908. Because the article was neither attached to nor referenced in the Complaint, the Court cannot take judicial notice of the County prosecutor's assessment of the case against Plaintiff, Id. at 908-09, and the article is unnecessary to the analysis that follows, Defendant's Motion to Strike is GRANTED.

**II.     Defendant's Motion to Dismiss**

**A.  Legal Standards**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016).

In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (1955)). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice, nor will "naked assertions" devoid of "further factual enhancement." Id.

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to that for a motion to dismiss under Rule 12(b)(6). Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, dismissal on the pleadings is proper only if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

**B. Section 1983 Brady-based Due Process Claim**

Plaintiff alleges that Defendant violated his due process rights by failing to disclose material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Such evidence is material under Brady if "(1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." Gantt v. City of Los Angeles, 717 F.3d 702, 709 (9th Cir. 2013) (quoting Smith v. Almada, 640 F.3d 931, 939 (9th Cir. 2011)).

Prejudice is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v.

Greene, 527 U.S. 263, 280 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419 (1995). Here, both the Defendant and Ms. Garcia testified at Plaintiff's trial; a reasonable fact-finder could conclude that had Plaintiff been able to impeach them with evidence of their affair and efforts to obtain Ms. Garcia a U-Visa based on her allegations against Plaintiff, the verdict would have been different. (Id., ¶¶ 3.18-3.22, 3.25, 3.29, 3.32-3.33.) In fact, when evidence of the affair was disclosed, the presiding judge described the situation as a "miscarriage of justice," hardly a "verdict worthy of confidence." (Id., ¶¶ 3.53-3.54.)

But Defendant argues that because Plaintiff's conviction was eventually vacated, he cannot establish prejudice under Brady. (Dkt. No. 18 at 5-8.) As support, Defendant cites several cases where the plaintiff's Brady claim was dismissed because there was no conviction. (Dkt. No. 18 at 6-8 (citing Almada, 640 F.3d at 941 (Gwin, J, concurring) (urging the court to find that the plaintiff could not "make a Brady claim where there has been no conviction"); Puccetti v. Spencer, 476 F. App'x 658, 660 (9th Cir. 2011) (finding that plaintiffs could not make out a Brady claim because the criminal charges against them were dismissed); Dinius v. Perdock, No. C 10-3498 MEJ, 2012 WL 1925666, at *6 (N.D. Cal. May 24, 2012) (dismissing plaintiff's Brady claim because he was acquitted)).) None of these cases are applicable here, because the Plaintiff was convicted. (FAC at ¶ 3.29); RCW 9.94A.030(9) (defining conviction as "an adjudication of guilt . . . includ[ing] a verdict of guilty . . . ."); see also Almada, 640 F.3d at 941 (Gwin, J, concurring) (arguing that a conviction should be a necessary element of a Brady claim).

Defendant cites only one case where a Brady claim was dismissed despite the plaintiff's conviction. (Dkt. No. 18 at 7 (citing Lopez v. Haskell, No. 518CV01196CJCKES, 2018 WL 4223765, *6 (C.D. Cal. July 11, 2018), report and recommendation adopted, No. 518CV01196CJCKES, 2018 WL 4219191 (C.D. Cal. Sept. 4, 2018) (finding that the plaintiff could not demonstrate prejudice because his conviction was overturned on appeal and he was able to use the withheld evidence during his re-trial)).) The Court finds Lopez, and the idea that an overturned conviction fails to establish prejudice, unpersuasive.

As established by Plaintiff's allegations, a criminal conviction is a singular event, stamping the Plaintiff with the imprimatur of guilt, which is built upon the public assumption that he received a fair trial. Once Plaintiff was convicted he was no longer eligible for bail (Dkt. No. 21 at 4), was publicly identified as a convicted felon (Id. at ¶ 3.65), lost his research grant from the University of New England in Australia (Id. at ¶ 3.66), and lost custody of his minor son (Id. at ¶ 3.74). Plaintiff's allegations regarding his conviction and the consequences stemming from the conviction establish prejudice under Brady.

**C. Section 1983 Conspiracy Claim**

Defendant also moves to dismiss Plaintiff's conspiracy claim, arguing that it rests on Plaintiff's Brady claim, which Defendant argues is not viable, and is conclusory.[1] (Dkt. No. 18 at 8-9.) The Court disagrees. To establish liability for a conspiracy under Section 1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate

---

[1] Defendant also argues that because Plaintiff inexplicably failed to respond to his arguments regarding his conspiracy claim, Defendant is entitled to dismissal. (Dkt. No. 24 at 4.) But because it is Defendant who shoulders the burden under Rules 12(b)(6) or 12(c), the Court must evaluate whether the law supports his arguments. See McGlinchy, 845 F.2d at 810 (noting that dismissal on the pleadings is proper only if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law").

constitutional rights. Crowe v. Cty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989) (en banc).

First, as discussed above, Plaintiff has sufficiently alleged a violation of his constitutional right to a fair trial. (See supra, Section II.B.) Second, Plaintiff has moved well-beyond conclusory pleading, alleging that Defendant and Ms. Garcia conspired to keep the fact of their affair from him, depriving him of a right to a fair trial so Ms. Garcia could obtain a U-Visa from the federal government. (FAC at ¶¶ 3.20, 3.23-3.24, 3.39, 6.1.) Plaintiff further alleges that in order to accomplish this, Defendant instructed Ms. Garcia on how she should testify, dressed her for trial, and attempted to keep the fact of the affair from Plaintiff even after the trial, telling Ms. Garcia to "fix it" when she finally disclosed the affair and offering to pay her to remain silent. (Id. ¶¶ 3.18-3.19, 3.38.) Such "[f]abrication of evidence and deliberately concealing exculpatory evidence are actions which, if true, could qualify as overt acts in furtherance of a conspiracy." Spencer v. Peters, 966 F. Supp. 2d 1146, 1168 n.5 (W.D. Wash. 2013), on reconsideration in part (Oct. 2, 2013). Plaintiff also alleges that the Defendant told investigators that "Ms. Garcia set people up," tacit acknowledgement that he was aware that Ms. Garcia was attempting to frame the Plaintiff with his help. (Id. at ¶ 3.34.) Accordingly, the Court will not dismiss Plaintiff's conspiracy claim.

**D. Negligence**

Plaintiff brings a negligence claim against the Defendant, alleging that he knew he had a duty to conduct a fair investigation (Id., ¶ 3.40), knew he had a duty to investigate and retain all evidence that may impeach any witness in the case (Id., ¶ 3.41), knew it was improper to have an

affair with a witness in a case he was investigating, (Id., ¶ 3.43), and knew that his affair with Ms. Garcia violated policies and procedures of the San Juan County Sheriff's Office (Id., ¶ 3.44).

Defendant, construing Plaintiff's allegations as a claim for negligent investigation, now moves to dismiss, arguing that negligent investigation is only recognized in Washington in two situations, neither applicable here: cases of child abuse investigated by the Department of Social and Health Services, and when an employer has a contractual obligation to provide reasons for dismissal but fails to conduct a reasonable investigation. 16A Wash. Prac., § 22:14 (4th ed.); Ducote v. State, Dep't of Soc. & Health Servs., 144 Wash. App. 531, 534 (2008), aff'd, 167 Wash. 2d 697 (2009). Because Plaintiff's Response does not address Defendant's argument or offer an alternative theory of negligence (see Dkt. No. 21), Plaintiff's negligence claim against Defendant Parker is DISMISSED.

**Conclusion**

Therefore, the Court:

(1) GRANTS Defendant's Motion to Strike;

(2) DENIES Defendant's Motion to Dismiss Plaintiff's Section 1983 Brady and conspiracy claims; and

(3) GRANTS Defendant's Motion to Dismiss Plaintiff's negligence claim against Defendant Parker, DISMISSING the claim without prejudice;

//

//

//

//

//

The clerk is ordered to provide copies of this order to all counsel.

Dated February 13, 2020.

Marsha J. Pechman
United States District Judge