UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD TINNER, | CASE NO. C19-925 MJP |
| Plaintiff, | ORDER |
| v. | 1.  MOTION TO SUPPLEMENT RECORD |
| SAN JUAN COUNTY, et al., | 2.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

The above-entitled Court, having received and reviewed:

1. Defendants Krebs and San Juan County's Motion for Summary Judgment (Dkt. No. 27), Plaintiff's Consolidated Response (Dkt. No. 40), Defendants Krebs and San Juan County's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. No. 49);

2. Defendant Parker's Motion and Memorandum of Authorities Supporting Summary Judgment Dismissal (Dkt. No. 30), Defendant Parker's Reply Brief Supporting Summary Judgment Dismissal and Motion to Strike (Dkt. No. 51);

3. Plaintiff's Motion to Supplement Record (Dkt. No. 66), Defendant Parker's Response (Dkt. No. 70), Defendants Krebs and San Juan County's Response (Dkt. No. 74), and Plaintiff's Reply (Dkt. No. 75);

all attached declarations and exhibits, relevant portions of the record, and having heard oral argument, rules as follows:

IT IS ORDERED that the motion to supplement the record is DENIED.

IT IS FURTHER ORDERED that the summary judgment motions are GRANTED; this matter is hereby DISMISSED with prejudice.

## Background

While what actually transpired between Plaintiff Gerald Tinner, Natalia Garcia, and Defendant Stephen Parker will likely forever remain a mystery to the public at large, the facts as they are relevant to the disposition of this case are essentially undisputed:

Plaintiff, a teacher at Orcas Island High School, was charged with violations of RCW 9A.44.093, two felony counts of sexual misconduct with a minor related to allegations brought by his then 19-year-old student teaching assistant (Natalia Garcia; hereinafter, "Ms. Garcia"). Dkt. No. 28, Decl. of Cooley, Ex. A. The crime is a statutory sexual offense; i.e., consent or lack thereof is not an element of the crime. The investigating officer was Defendant Stephen Parker, at the time a San Juan County Sheriff's Deputy. Dkt. No. 3, Amended Complaint, ¶ 3.10.

At trial, the primary evidence against Plaintiff consisted of the testimony of Ms. Garcia and two pieces of physical evidence – a pair of Ms. Garcia's underwear and a tissue with which Ms. Garcia claimed to have wiped herself after a sexual encounter with Plaintiff. DNA and sperm from both items of evidence were tested by the Washington State Police Crime Lab and the results were a match to a sample of Plaintiff's DNA collected and submitted by Defendant

1   Parker.  Dkt. No. 29, Decl. of Uhrich, Exs. A-D.  In addition to Ms. Garcia, both Plaintiff and

2   Defendant Parker testified and were cross-examined.  The physical evidence cited *supra* was

3   admitted without objection as to either chain of custody or admissibility.  Decl. of Cooley,

4   Testimony of Parker, Ex. H at 171, 176.  The trial court granted the State's motion in limine to

5   exclude references to or questions regarding any sexual relationships of the victim with other

6   people.  Id., Ex. K, L.  The jury found Plaintiff guilty on both counts.  Id., Exs. J, M.

7        Following the trial but prior to sentencing, allegations surfaced from Ms. Garcia

8   regarding a sexual relationship with Defendant Parker which had commenced within weeks of

9   the beginning of the investigation and continued through the trial.  Amended Complaint, ¶ 3.32.

10  Additionally, an employee of the county prosecutor's office (Ms. Miller, the county's Victim

11  Service Advocate) advised that Parker had told her he believed that Ms. Garcia "set people up."

12  Id. at ¶ 3.34.  Defendant Parker has subsequently denied making any such statement or holding

13  such opinion, and denied engaging in any sexual relationship with Ms. Garcia.  Dkt. No. 31,

14  Decl. of McMahon, Deposition of Parker, Ex. 1 at 47, 72.  An internal investigation by the SJC

15  Sheriff's Department concluded that Parker had a sexual relationship with Ms. Garcia.  Dkt. No.

16  41, Decl. of Power, Ex. D.

17       Following the revelations regarding Defendant Parker and Ms. Garcia, Plaintiff's trial

18  counsel moved for a new trial, citing not only the undisclosed relationship between Parker and

19  Ms. Garcia and the undisclosed statement regarding a "set-up," but also a list of other

20  information not provided to Plaintiff's criminal counsel prior to trial.  The motion was granted on

21  Brady grounds (based on two undisclosed pieces of evidence: the "set-up" comment and the fact

22  that Ms. Garcia had vacillated about whether she would testify against Plaintiff), the conviction

23  was vacated, and a new trial ordered.  Decl. of Power, Ex. A, Transcript of June 15, 2016 San

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

Juan County Superior Court hearing.  The State initially appealed the grant of a new trial, but later withdrew the appeal.  After the appeal was remanded to Superior Court, the trial judge dismissed the charges against Plaintiff completely, insulating him from further criminal prosecution.  Amended Complaint, ¶ 3.53.  Defendant Parker resigned from the SJC Sheriff's Department and left the area.

In June of 2019, Plaintiff initiated this lawsuit against Parker, San Juan County Sheriff Krebs, and San Juan County itself.  Dkt. No. 3, Amended Complaint.  The complaint alleged causes of action for:

1. Due process violations (a/k/a "Brady violations") pursuant to 42 U.S.C. § 1983 (all Defendants)

2. Monell claim for violation of due process rights (Defendants SJC and Krebs)

3. Conspiracy claim under 42 U.S.C. § 1983 (Defendant Parker)

4. Negligence (all Defendants)

5. Outrage (all Defendants)

Id., pp. 10-14.

Defendants have moved for summary judgment dismissing all claims.  After the summary judgment motions came ripe, Plaintiff filed a motion to supplement the record.

**Discussion**

***Motion to Supplement the Record***

Over three months after Defendants' summary judgment motions came ripe, Plaintiff has filed a motion to supplement the record with deposition testimony from San Juan County's Victim Service Advocate, Ms. Miller, and also from Ms. Garcia.  Dkt. Nos. 66, 67.

1    The motion is without merit for two reasons.  First, Plaintiff never filed a motion with

2  this Court under FRCP 56(d), which is the proper vehicle for a party wishing to place responsive

3  evidence not currently in its possession before the court.  Plaintiff never claimed, prior to the

4  filing of the motion to supplement the record, that the depositions of Ms. Miller and Ms. Garcia

5  were necessary to present facts essential to opposing Defendants' summary judgment motions.

6    Second, the means by which Plaintiff has chosen to attempt to present the additional

7  evidence permits Defendants no opportunity to respond to the substance of the testimony, either

8  with evidence of their own or with legal argument.  The Court will not exercise its discretion to

9  permit this subversion of the advocacy process.

10    The motion to supplement the record is DENIED.

11  ***_Summary Judgment Motions_***

12  Standard of review

13    "The court shall grant summary judgment if the movant shows that there is no genuine

14  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

15  Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving

16  party fails to make a sufficient showing on an essential element of a claim in the case on which

17  the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

18  (1985).

19    There is no genuine issue of fact for trial where the record, taken as a whole, could not

20  lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith

21  Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

22  probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e).  Conversely,

23  a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

1    factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  Anderson

2    v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical

3    Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

4    Defendant Parker

5            The Court has determined that this Defendant is entitled to invoke his right to qualified

6    immunity as a means of avoiding the claims brought against him in this lawsuit.

7            The doctrine found its origins in the reluctance of courts to hold officials performing

8    discretionary functions liable if it could not be said that their conduct violated "clearly

9    established rights" which those officials reasonably should have been expected to know.  Harlow

10   v. Fitzgerald, 457 U.S. 800, 818 (1992).  The early test for determining qualified immunity

11   involved a two-part inquiry: first, whether a showing of a constitutional rights violation had been

12   made; and, second, "whether that right is clearly established."  Saucier v. Katz, 533 U.S. 194,

13   201 (2001). Later, the Supreme Court amended that procedure by making it discretionary

14   whether to begin the inquiry with the first or second question.  Pearson v. Callahan, 555 U.S.

15   223, 236-37 (2009).

16           The test has been further refined based on a formulation articulated by Justice Scalia in

17   Ashcroft v. al-Kidd, 563 U.S. 731, 740 (2011).  Quoting a portion of an earlier case, Justice

18   Scalia wrote:

19           A Government official's conduct violates clearly established law when, at
20           the time of the challenged conduct, "[t]he contours of [a] right [are]
             sufficiently clear" that every "reasonable official would [have understood]
21           that what he is doing violates that right." *Anderson* v. *Creighton*, 483 U.S.
             635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). We do not require a
22           case directly on point, but existing precedent must have placed the
             statutory or constitutional question beyond debate.

23

24

1   (emphasis supplied.)  The Ninth Circuit has echoed this formulation of the qualified immunity

2   analysis.  Mattos v. Aragano, 661 F.3d 433, 442 (9th Cir. 2011)("[W]e ask whether its contours

3   were sufficiently clear that every 'reasonable official' would have understood that what he is

4   doing violates that right.").

5        It is in this light that the Court examines the actions of Defendant Parker and concludes

6   that he is entitled to qualified immunity in this lawsuit.  The Court's analysis will answer both

7   parts of "Brady inquiry:" whether the non-disclosure violated any constitutional rights, and

8   whether the rights that Plaintiff alleges were violated were "clearly established" (i.e., would

9   every police officer have understood that what this particular police officer is alleged to have

10  done was a violation of Plaintiff's constitutional rights?).

11       For purposes of this analysis, the Court, looking at the evidence in the light most

12  favorable to the non-movant, will assume that Parker (1) had a sexual relationship with Ms.

13  Garcia and (2) related to the county prosecutor's victim advocate a belief that Ms. Garcia "set

14  people up," neither of which he disclosed to anyone in the prosecutor's or Sheriff's office nor to

15  Plaintiff's criminal defense attorney.

16       Plaintiff is attempting to vindicate his constitutional rights under principles enunciated in

17  Brady v. Maryland, 373 U.S. 83 (1963)("the suppression by the prosecution of evidence

18  favorable to an accused upon request violates due process where the evidence is material either

19  to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution;" id. at

20  87).  In the years since Brady, the reach of the rule has expanded considerably.  Favorable

21  evidence under Brady now extends beyond exculpatory evidence to impeachment evidence

22  (Giglio v. United States, 405 U.S. 150, 154-55 (1972)), to evidence not specifically requested by

23

24

the defense (U.S. v. Agurs, 427 U.S. 97, 110 (1976)), and to evidence in the possession of the

police as well as the prosecution. Kyles v. Whitley, 514 U.S. 419, 437 (1995).

The current standard calls for proof by a criminal defendant of the following:

> There are three components of a true *Brady* violation: The evidence at
> issue must be favorable to the accused, either because it is exculpatory, or
> because it is impeaching; that evidence must have been suppressed by the
> State, either willfully or inadvertently; and prejudice must have ensued.

Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Despite the expanded scope of the rule in Brady, Plaintiff has failed to establish that any

evidence which Defendant Parker did not disclose is either exculpatory or impeaching.  In order

to be exculpatory, it would had to have had some connection in logic and common sense to

Plaintiff's innocence of the crimes of which he was charged.  Regarding the sexual relationship,

Plaintiff has been unable to articulate a plausible connection between the existence of that

relationship and his declaration of innocence.

The problem with Plaintiff's entire "exculpatory theory" is that it relies (as it must, given

the evidence adduced at his criminal trial) on the premise that the evidence against him (both Ms.

Garcia's testimony and the physical evidence of sexual activity) was fabricated.  If Ms. Garcia

was lying about having had sex with Plaintiff, the lie predates her meeting Defendant Parker by a

matter of weeks; therefore the existence of a relationship between Ms. Garcia and Defendant

Parker has no relevance as to that element of Plaintiff's defense.   That leaves the physical

evidence – lab test results positively identifying as Plaintiff's both DNA and sperm on underwear

and a tissue, results which Plaintiff did not challenge at his criminal trial and has not come

forward with contradictory proof regarding during the course of this lawsuit.  In the absence of

either evidence or even a plausible scenario concerning how Defendant Parker and Ms. Garcia

1    could have fabricated that evidence, the fact that the two had a physical relationship has no

2    tendency to exculpate Plaintiff and thus no "Brady value" in that regard.

3        Plaintiff cites an Eighth Circuit case which he contends is both analogous to his situation

4    and favors a finding that he has a meritorious § 1983 claim against Defendant Parker.  The Court

5    disagrees on both points.  The case is White v. McKinley, 605 F.3d 525 (8th Cir. 2010), and the

6    appellate court in White affirmed the trial court's denial of summary judgment and new trial

7    motions by the defendant police officer, letting stand a verdict that the plaintiff's due process

8    rights had been violated by the officer's suppression of exculpatory evidence and nondisclosure

9    of his romantic relationship with the plaintiff's ex-wife.

10       The facts of White are deceptively similar to this case, but distinguishable in two

11   critically important ways.  First, the romantic relationship between the police officer and the ex-

12   wife *predated* the allegations against the plaintiff, thus lending increased credibility to the theory

13   that the two had conspired against the plaintiff to manufacture the criminal charges (molestation

14   of a girl who was the ex-wife's biological child and the plaintiff's stepdaughter) of which the

15   plaintiff was eventually acquitted.  Second, the physical evidence which the defendant police

16   officer had failed to disclose was unquestionably exculpatory: diary entries by the alleged victim

17   expressing her affection and admiration for her stepfather.

18       Plaintiff's facts are materially different.  The Parker-Garcia relationship commenced well

19   after the accusations of wrongdoing had surfaced; there can be no assertion that the accusations

20   originated as a result of that relationship.  The suppressed evidence in White was

21   incontrovertibly exculpatory; no undisclosed evidence in this case can be said to possess that

22   quality.

23

24

Justice Scalia's formulation of the test to determine whether every reasonable official should know that his/her actions were violating someone's constitutional rights did not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. at 740.  White (an Eighth Circuit case not binding in this locality and materially distinguishable on its facts) is not that case for this Plaintiff.

The statement made to the Victim Services Advocate that Defendant Parker believed that Ms. Garcia "set people up" is similarly devoid of exculpatory "Brady value."  If Plaintiff wishes the Court to read the statement as indicative that Ms. Garcia set him up by enticing him into a sexual relationship, even if that were true it would have no exculpatory value: the crimes with which Plaintiff was charged represented a form of statutory rape, therefore it is irrelevant whether Ms. Garcia was a willing participant and/or manipulated Plaintiff into the sexual encounter.  If the Plaintiff wishes the Court to read the statement as somehow proof of a deeper conspiracy (i.e, that the "set up" began with a lie about the sexual encounters and extended to the manufacture of the physical evidence against him), then he runs into the same dead end (no supporting evidence, no plausible scenario) as the Court has noted *supra*.

Nor does the non-disclosure of which Plaintiff complains constitute evidence which Plaintiff could have used for its impeachment value.  The benefit to Plaintiff of exposing either Defendant Parker or Ms. Garcia (or both) as "impeachable" (i.e., potentially dishonest and untrustworthy) rests entirely on his "fabricated evidence" theory.   The only point of impeaching Defendant Parker would have been in support of Plaintiff's argument that Parker had been instrumental in fabricating the evidence against him.  The Court has already ruled on the absence of any proof (and the resultant logical untenability) of that theory; impeaching Defendant Parker

1   would not alter that conclusion.  The probative value of that evidence is nil; the prejudicial

2   impact high.

3          Nor was the non-disclosed evidence available to impeach Ms. Garcia.  The existence of a

4   sexual relationship between herself and Defendant Parker is in no way probative of her character

5   for truthfulness or her general credibility, not to mention that its introduction runs afoul of the

6   Washington "rape shield" law which states that "evidence of the victim's past sexual behavior…

7   is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent…"

8   RCW 9A.44.020(2).   The Court acknowledges that the rape shield law is not an absolute bar to

9   the admission of evidence of prior sexual behavior.  State v. Hudlow, 99 Wn.2d 1, 7 (1983),

10  articulated the test for determining the admissibility of a victim's past sexual conduct.

11          [E]vidence of the victim's past sexual behavior admissible on the issue of
            consent only if: (1) it is relevant; (2) its probative value substantially
12          outweighs the probability that its admission will create a substantial
            danger of undue prejudice; and (3) its exclusion will result in denial of
13          substantial justice to the defendant.

14  Since "consent" was not an issue in Plaintiff's criminal prosecution, it is an open question

15  whether the Hudlow test would be applied to questions of credibility, but even assuming it would

16  be the Court still finds that the evidence of a Garcia-Parker relationship does not satisfy the

17  elements of the test.  Plaintiff has failed to demonstrate its relevance (defined as its tendency to

18  make any element of his criminal defense more likely to be true) and its admission creates a

19  "substantial danger of undue prejudice" (the very reason the rape shield law was instituted in the

20  first place) that far outweighs its negligible probative value.

21          The undisclosed "set up" comment is even further devoid of exculpatory or impeachment

22  value as regards Ms. Garcia.  Defendant Parker denies making the statement or holding that

23  belief, making him unavailable for any line of examination that might elucidate his reasons for

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

1    the opinion.  Ms. Garcia did not make the statement, rendering it inadmissible for any purpose

2    related to her credibility.

3         In the absence of any exculpatory or impeachment value, the Court finds the fact of the

4    non-disclosure of either of these pieces of evidence does not violate the rule announced in Brady

5    or further developed in later cases.  The Court thus answers both questions related to qualified

6    immunity in the negative: there was no constitutional violation created by the nondisclosure, and

7    thus no reasonable police officer would have known that failing to disclose the information

8    created such a violation.

9         On that basis, Defendant Parker is entitled to qualified immunity, which represents not

10   simply a defense but an immunity from suit.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  His

11   motion for summary judgment will be granted and the claims against him dismissed with

12   prejudice.

13   Defendants Krebs and San Juan County

14        The Court will examine each claim against these Defendants in order.

15        *Due process violation pursuant to § 1982 (Brady violation)*

16        The analysis *supra* regarding Defendant Parker would be equally applicable to these

17   Defendants, were it not foreclosed by an even more absolute barrier; namely, the complete

18   absence of any evidence that these Defendants were aware of any of the undisclosed information

19   prior to its disclosure post-trial.

20        This is particularly fatal to the prosecution of a § 1983 claim in federal court.  *Mens rea*

21   as regards a Brady violation represents a very low bar in a state criminal prosecution, where

22        the suppression of Brady material [in a state criminal proceeding]
         "violates due process ... irrespective of the good faith or bad faith of the
23        prosecution." Brady, 373 U.S. at 87, 83 S.Ct. 1194… [While] a § 1983
         plaintiff should not be required to show that officers acted in bad faith in

24

1    withholding material, exculpatory evidence from prosecutors… a § 1983
      plaintiff must show that police officers acted with deliberate indifference
2    to or reckless disregard for an accused's rights or for the truth in
      withholding evidence from prosecutors.

3    <u>Tennison v. City & Cty. of San Francisco</u>, 570 F.3d 1078, 1088 (9th Cir. 2009).

4        There can be no showing of "deliberate indifference or reckless disregard" in the absence

5    of some foreknowledge of the existence of the undisclosed evidence.  In response to the

6    challenge presented by these Defendants' summary judgment motion, Plaintiff has adduced no

7    proof that, prior to the post-trial revelation of the Parker-Garcia relationship and Parker's "set

8    up" comments regarding Ms. Garcia, either Defendant Krebs or any other official of San Juan

9    County knew of this evidence and through "deliberate indifference or reckless disregard" for

10   Plaintiff's rights chose to withhold it.   On that basis, the § 1983 claim based on a violation of

11   <u>Brady</u> cannot be sustained against either of these Defendants.

12       *Due process violation (Monell claim)*

13

14       The Court begins its analysis of this claim by noting that it is plead in an ambiguous and

15   confusing fashion in Plaintiff's amended complaint, and that Plaintiff made no attempt to defend

16   it in response to Defendants' summary judgment challenge.    The Court agrees with Defendants

17   that this second cause of action appears to be composed of three "sub-claims:"

18       1.    Ratification/approval of unconstitutional conduct
19       2.    Improper hiring, training, and supervision
20       3.    Policies, regulations and practices "which if followed would likely result in the
               violation of the constitutional rights of Plaintiff and others" (Dkt. No. 3, Amended
21             Complaint at ¶ 5.2.)

22       Regarding "ratification or approval:" ratification of a subordinate's unconstitutional

23   action can amount to a constitutional violation (<u>Gillette v. Delmore</u>, 979 F.2d 1342, 1347 (9th

24   Cir. 1992)),  but Plaintiff comes forward with no evidence that Defendant Krebs was aware of,

1    much less endorsed, the unethical, undisclosed conduct of his deputy, or was aware of evidence

2    or opinions regarding Ms. Garcia "setting people up."  Plaintiff presents no evidence rebutting

3    the Sheriff's testimony that Parker's sexual relationship with Ms. Garcia  was a violation of his

4    office's policies and procedures, and that Parker would have been fired if he had not resigned.

5    Dkt. No. 28, Decl. of Cooley, Ex. R, Krebs Depo at 7; Dkt. No. 41, Decl. of Power, Ex. D.

6    Defendant Krebs is entitled to summary judgment dismissing this portion of the claim against

7    him.  The absence of any evidence regarding any official of Defendant San Juan County in this

8    regard compels a similar result.

9           Demonstrating that the county's hiring policies violated his rights under § 1983 requires a

10   showing by Plaintiff that (1) the hiring procedures of the policymaker were inadequate; (2) the

11   policymaker was deliberately indifferent in adopting the hiring policy; and (3) the inadequate

12   hiring policy directly caused Plaintiff's injury.  City of Canton v. Harris, 489 U.S. 378 (1989).

13   In response to Defendants' motions, Plaintiff presents no evidence on any of these requisite

14   elements; in fact, does not even specifically cite to which policy or procedure his complaint

15   concerns.  Summary judgment dismissing this portion of the Monell claim will be granted.

16          Additionally, Defendants cite to case law concerning § 1983 claims based on inadequate

17   training which treats them as a further extension of "unconstitutional policies and practices"

18   jurisprudence.  But the bar is similarly high:

19          To satisfy [§ 1983], a municipality's failure to train its employees in a
            relevant respect must amount to "deliberate indifference to the rights of
20          persons with whom the [untrained employees] come into contact."
            [*citation omitted*]  Only then "can such a shortcoming be properly thought
21          of as a city 'policy or custom' that is actionable under § 1983." [*citation
            omitted*].
22

23          "'[D]eliberate indifference' is a stringent standard of fault, requiring proof
            that a municipal actor disregarded a known or obvious consequence of his
24          action."  [*citation omitted*]… A pattern of similar constitutional violations

by untrained employees is "ordinarily necessary" to demonstrate
deliberate indifference for purposes of failure to train. [*citation omitted*].

Connick v. Thompson, 563 U.S. 51, 61-62 (2011).  Again, Plaintiff comes forward with no

evidence that would satisfy this standard.  Defendants are entitled to summary judgment on the

entirety of this § 1983/Monell claim as well.

*Negligence*

At the heart of any negligence claim is the existence of a duty owed by the alleged

tortfeasor to the Plaintiff.  Washington law does not recognize a duty flowing between a law

enforcement agency in the course of a criminal investigation and the object of that investigation.

Dever v. Fowler, 63 Wn.App. 35, 45 (1991); *amended on denial of reconsideration* (Dec. 20,

1991), amended, 824 P.2d 1237 (1992).  *See also* Janaszak v. State, 173 Wn.App. 703, 725

(2013).   Plaintiff comes forward with no authority to the contrary, and there can be no

negligence in the absence of a duty.  The remaining Defendants are entitled to summary

judgment dismissing this cause of action against them.

*Outrage*

To establish a claim for the tort of outrage, [a plaintiff] must demonstrate
that (1) he suffered severe emotional distress; (2) the emotional distress
was inflicted intentionally or recklessly, and not negligently; (3) the
conduct complained of was outrageous and extreme; and (4) he personally
was the object of the outrageous conduct. The defendant's conduct must be
"'so outrageous in character, and so extreme in degree, as to go beyond all
possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.'"

Janaszak v. State, 173 Wn. App. 703, 726, 297 P.3d 723, 736 (2013)(*quoting* Grimsby v.

Samson, 85 Wn.2d 52, 59 (1975)).  Because Plaintiff has failed to demonstrate any pre-existing

knowledge on the part of Defendants San Juan County and Krebs regarding Parker's activities or

1   statements, the claim fails against them for lack of any proof of "intentional or reckless"

2   infliction of distress upon him by those parties.

3       Additionally, while it could certainly be argued that an investigating officer permitting

4   himself to become sexually involved with a victim (of a sex crime, no less) is "atrocious, and

5   utterly intolerable in a civilized community," that relationship in and of itself inflicted no

6   damage on Plaintiff.  It is Defendant Parker's withholding of the existence of the relationship,

7   and the suppression of whatever evidence he had to support his statement that Ms. Garcia "set

8   people up" that is the proximate cause of the emotional distress he is alleged to have inflicted on

9   Plaintiff.  *That* behavior (the withholding of exculpatory or impeachment evidence) does not

10  qualify as "beyond all possible bounds of decency."  Plaintiff has produced no case authority that

11  has ever so held.

12      Defendants' motions for summary judgment dismissing the cause of action for outrage

13  will be granted.

14

15  **Conclusion**

16      Plaintiff's motion to supplement the record will be denied as improper and untimely.  All

17  claims against Defendant Parker will be dismissed on the basis of the finding that he is eligible

18  for qualified immunity.  Plaintiff having failed to respond with evidence supporting all elements

19  of the claims against Defendant Krebs and Defendant San Juan County, their motion for

20  summary judgment will be granted and all claims dismissed against them with prejudice.

21

22

23

24

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16

The clerk is ordered to provide copies of this order to all counsel.

Dated July 21, 2020.

Marsha J. Pechman
United States Senior District Judge